UNION PACIFIC RAILROAD COMPANY V. SILAS THOMPSON
ET AL.

FILED JANUARY 3, 1906.   No. 14,078.

1. Evidence examined, and *held* sufficient to submit to the jury the question of negligent delay in the operation of a stock train.

2. Depositions. An action was pending in the county court, and the plaintiff served notice of taking depositions, but by mistake the notice referred to the action as pending in the district court. The depositions were returned by the notary to the clerk of the district court and filed in that court. On the trial of the case in the county court, the depositions were by agreement of the parties taken from the office of the clerk of the district court and read upon the trial. The defendant appealed the case to the district court and there moved to suppress the depositions because not properly certified, and because there was no action pending in the district court when the same were taken and returned to that court. *Held*, That the district court did not err in overruling the motion and allowing the depositions to be read.

3. A stock shipping contract contained a provision to the effect that, unless claims for loss, damage or detention are presented within ten days from the date of unloading the stock at destination and before said stock has been mingled with other stock, such claims shall be deemed to be waived, and the carriers and each thereof shall be discharged from liability. *Held*, Upon the authority of *Missouri P. R. Co. v. Vandeventer*, 26 Neb. 222, that such provision was void and ineffective under the laws of this state.

4. Trial: ISSUES: EVIDENCE. Where evidence is taken without objection on a question not put in issue by the pleadings, the admission of the evidence makes it an issue, and the court cannot exclude it by an instruction after the parties have rested, nor can the party on appeal urge that it was not an issue in the case.

ERROR to the district court for Custer county: BRUNO O. HOSTETLER, JUDGE. *Affirmed.*

*John N. Baldwin, Edson Rich, John A. Sheean* and *A. R. Humphrey,* for plaintiff in error.

*H. M. Sullivan, contra.*

DUFFIE, C.

In their petition filed in the district court, Thompson and Tierney alleged that they delivered certain stock to the Union Pacific Railroad Company at Oconto, Custer county, Nebraska, for shipment to South Omaha; that the stock was delivered to the defendant company at 2 o'clock in the afternoon of March 24, 1903, and that it was careless and negligent in not transporting and delivering said stock at South Omaha by 2 o'clock in the morning of the 25th of March, 1903; that defendant carelessly and negligently kept the said stock in the cars and on the road until 6 o'clock in the evening of the 25th of March; that the stock did not reach South Omaha until after the market had closed on the 25th, and plaintiffs were compelled to keep the stock over and to sell the same on the 26th at 15 cents a hundred less than they would have brought on the 25th, in consequence of a decline in the market. A claim is also made for shrinkage of the stock, and for damages to one

33

cow that got down and was crippled from being trampled
on by other stock, all of which, it is claimed, occurred in
consequence of defendant's negligence. The answer was a
general denial, an allegation that the train was run with
all reasonable speed, and that such delays as occurred were
in consequence of being laid out for other trains which had
the right of way and of putting a new brass in a box which
had become heated.. It was further alleged that the ship-
pers accompanied the stock for the purpose of caring for
the same and were furnished with free transportation for
that purpose. As a further defense it is alleged that at
the time the contract of shipment was made, and in con-
sideration of reduced freight charges and other considera-
tions set forth in the contract, the following condition was
expressly agreed to and incorporated therein, viz.: "Unless
claims for loss, damage or detention are presented within
ten days from the date of the unloading of said stock at
destination and before said stock has been mingled with
other stock, such claims shall be deemed to be waived, and
the carriers and each thereof shall be discharged from lia-
bility." No reply was filed to this answer, but a trial was
had upon the theory that a reply in the form of a general
denial had been interposed. The jury returned a verdict in
favor of the plaintiffs for $100, upon which judgment was
entered, and the company has taken error to this court.

A motion was made to suppress depositions taken by the
plaintiffs upon the ground that they were taken before the
action was pending in the district court, and that they were
not addressed to the clerk of the court in which the action
was pending, and that they did not remain under seal until
opened by the clerk of the court to which they were ad-
dressed, and for the further reason that they were not prop-
erly certified. The case was originally tried in the county
court, where the depositions of Walter E. Wood and Bruce
McCulloch were offered in evidence and read. These depo-
sitions were taken in South Omaha on notice given by the
plaintiffs, the notice stating that they were to be used on
the trial of a case pending in the district court for Custer

county. It appears from the record that the depositions were returned and filed with the clerk of the district court for Custer county; that previous to the trial in the county court the attorney for the plaintiffs, on being informed of this fact, stated to counsel for the defendant that he would have to ask for a continuance unless he would consent to the use of the depositions in the county court, and that thereupon it was agreed that the depositions might be used, and they were used, in the county court, and upon appeal to the district court they were transferred with other papers in the case. Counsel who appeared for the defendant company in the county court, and who was also one of the counsel appearing in the district court, testified as follows: "I think in a general way I agreed that the depositions could be read in the county court." Upon this showing the motion to suppress was overruled and the depositions were used on the trial in the district court. The district court was clearly right in overruling the motion to suppress the depositions. While the case in which they were taken was pending in the county court and the notice served upon the defendant recited that they were to be filed and used in a case pending in the district court, no prejudice to the defendant resulted from such error. Defendant was represented by counsel who cross-examined the witnesses at the taking of the depositions. This might not, perhaps, have cured the error in the notice, or have given the plaintiffs a right to take depositions on file in the district court for use in the county court, in the absence of an agreement, but it clearly appears that such agreement was made, and the defendant company cannot now insist upon irregularities or objections to the depositions which might have been interposed in the absence of such agreement.

It is objected that there is not sufficient evidence to sustain a finding that the defendant company was negligent in operating the train upon which the plaintiff's stock was shipped, or in failing to use due diligence in avoiding delays in reaching South Omaha. We do not care to review the evidence on this question. Between Kearney and South

Omaha the train was sidetracked on numerous occasions, and delays extending from 25 minutes to 2 hours occurred on several occasions. The evidence of the conductor and engineer in charge was taken as to the causes of these delays. Several stops were occasioned by waiting for other regular trains which had the right of way over the train in question. As to these stops the engineer and conductor could properly testify, for the reason that the time card would show the time and place where such trains would pass, but numerous extra trains were upon the road, and many delays were occasioned by the passage of these extras. Orders from the train dispatcher would be necessary in such cases, and the evidence of the train dispatcher as to the necessity of these stops and their duration would be the best and most reliable evidence on the part of the company. His evidence was not offered, and no attempt to show the necessity of the delay, except by the train men, was made on behalf of the company. On the whole, we believe that there was sufficient evidence to submit to the jury the question of negligence on the part of the company in not operating its train with sufficient diligence. The evidence offered on behalf of the plaintiff tended to show that, because of the great length of time the cattle were on the road, they were in bad condition, some of them bruised and having the general appearance of cattle that had been in the cars a long time, and that on this account their selling price was depreciated about ten cents a hundred. This evidence came from Walter E. Wood, a salesman in the stock-yards. Objection is now made that the petition did not claim damages for the bruised or worn condition of the stock, and that that was not an issue in the case. It is sufficient to say in relation to this that no such objection to the evidence was made on the examination of the witness or at the time his deposition was offered in evidence. It is familiar law that, where evidence is taken without objection on a question not put in issue by the pleadings, the admission of the evidence makes it an issue, and the court cannot exclude it by an instruction, nor can the party

on appeal urge that it was not an issue in the case. *Collins v. Collins,* 46 Ia. 60; and *Wilson Sewing Machine Co. v. Bull,* 52 Ia. 554.

The defendant company tendered the following instruction based upon the clause of the shipping contract above referred to: "You are instructed that the evidence shows conclusively that no claim was made to the agents or officers of the defendant company prior to the mingling of the stock in question with other stock, and you will therefore find for the defendant." The court refused this instruction, and error is predicated thereon. We will again repeat the clause of the contract under which it is claimed this instruction was brought: "Unless claims for loss, damage or detention are presented within ten days from the time of the unloading of said stock at destination and before said stock has been mingled with other stock, such claims shall be deemed to be waived, and the carriers and each thereof shall be discharged from liability." Section 4, article XI of our constitution provides that "the liability of railroad corporations as common carriers shall never be limited." The district court undoubtedly took the view that this clause of the contract was an attempt to limit the common law liability of the carrier. It is not an open question in this state that common carriers cannot, by contract, limit their common law liability. If the question had not been foreclosed by a prior decision, we would incline to the holding that the clause above quoted does not encroach upon this rule. There is no attempt, in our judgment, to limit the common law liability of the carrier for damage sustained in consequence of its negligence. The carrier, by this clause, attempts to protect itself from fraud and imposition by being notified of any claim for damages, which the shipper may have, before the stock is mingled with other stock, in order that it may be inspected and evidence of its condition secured. It recognizes the liability of the carrier, but provides for prompt notice. In *Sprague v. Missouri P. R. Co.,* 34 Kan. 347, a similar contract was enforced, and held not to be an attempt to relieve

the carrier of any of its common law obligations or liability, and, referring to the case of *Goggin v. Kansas P. R. Co.*, 12 Kan. 416, the court said:

"It was there, as here, urged in support of the reasonableness and justice of the regulation, that the defendant was, at the time of the alleged injury, engaged in transporting great numbers of cattle and horses over its line of road, and which were being shipped to different points thereon, and that it would have been impossible for it to have distinguished one carload from another, unless its attention was called immediately thereto, and that the object of the notice and demand mentioned in the contract was to relieve it from any false or fictitious claim, and to give it an opportunity to have an inspection of the stock before they were removed or mingled with others, and the company could thus have an opportunity to ascertain and allow the actual damages suffered. These reasons are said to be cogent and the agreement is there held to be reasonable, just and valid. The decision in that case governs the one at bar, and the view which we have taken of the validity of this limitation accords with the decisions of other courts, among which the following may be cited: *Rice v. Kansas P. R. Co.*, 63 Mo. 314; *Oxley v. St. Louis, K. C. & N. R. Co.*, 65 Mo. 629; *Southern Express Co. v. Caldwell*, 21 Wall. (U. S.) 264; *Dawson v. St. Louis, K. C. & N. R. Co.*, 76 Mo. 514; *Texas C. R. Co. v. Morris*, 16 Am. & Eng. R. Cas. (o. s.) 259, and cases there cited."

To the same effect is *Wichita & W. R. Co. v. Koch*, 47 Kan. 575, and *Kalina v. Union P. R. Co.*, 69 Kan. 172, 76 Pac. 438. In the case last cited it was held: "Where the shipping contract contains a lawful provision requiring the shipper to do something as a condition precedent to recovery, the burden of showing the performance of such condition rests upon the shipper, and if he fail to show performance he cannot recover."

Our own court has apparently taken a different view of this class of contracts. In *Missouri P. R. Co. v. Vandeventer*, 26 Neb. 222, the following clause of a contract was

under consideration: "And for the consideration before mentioned, said party of the second part further agrees, that as a *condition precedent* to this right to recover any damages for any loss or injury to said stock, he will give notice in writing of his claim therefor to some officer of said party of the first part, or its nearest station agent, before said stock is removed from the place of destination above mentioned, or from the place of delivery of the same to said party of the second part, and before said stock is mingled with other stock."  As we understand, from the reading of the case, the district court instructed the jury relating to said clause of the contract as follows: "2d.  The jury are instructed that the contract in writing discloses that it is in consideration of a special rate, and if the jury believe from the evidence that the stock was not shipped on a special rate, but that plaintiff paid the full regular rate for such service, then the special reservations, exceptions or limitations sought to be availed of by defendant are without consideration, and the plaintiffs are not bound by the same, where they restrict or limit the liability of defendant as a common carrier."  Relating to this instruction, the court said: "Number two, in my opinion, goes too far in favor of the plaintiff in error, as it seems to imply that, had the property been shipped on a special rate, below the regular rate, the plaintiff in error could have availed itself of the special contract to avoid its liability as a common carrier, which, as I understand the effect of the constitutional provision, it could not do."  Speaking further of this contract, the court said: "As to the sixth clause of the shipping contract, set forth herein, and specially invoked by the plaintiff in error, if it were conceded that that clause was binding upon the defendants in error there is an entire want of evidence to bring the case within its provisions.  Kansas City was the place of destination of the property within its meaning.  The shipper agreed as a condition precedent to his right to recover damages for any loss or injury to stock, to give notice in writing of his claim therefor to some officer of the party of

the first part or its nearest station agent before said stock should be removed from its place of destination above mentioned, or from the place of delivery of the same to the party of the second part, and before such stock is mingled with other stock; and there is an entire lack of evidence, as shown by the bill of exceptions, of the removal of the stock from Kansas City, or of its having been mingled with other stock." This clearly indicates that the court regarded contracts of the kind under consideration as violative of our constitutional provision, and also that the burden was upon the defendant instead of the plaintiff to show that the notice provided was not given. We feel bound by this decision, which has been the rule in this state since 1889, and hold, therefore, that the court properly refused the instruction asked.

The court in its 14th instruction told the jury in plain terms that, where the shipper agrees, as in this case, to personally accompany and care for his live stock transported by the railway company and is given free transportation for that purpose, he cannot complain of any injury arising from his own fault in caring for the stock. The evidence is clear that no complaint was made to those in charge of the train that the cow above spoken of was down, nor was any request made of those in charge of the train to assist in helping her up. It is quite clear, therefore, that the jury could not have taken into consideration the damage to this cow in arriving at its verdict. The evidence relating to damages from shrinkage and from the generally bad condition of the stock fully justifies the amount of the verdict, and we recommend an affirmance of the judgment.

ALBERT and JACKSON, CC., concur.

By the Court: For the reasons stated in the foregoing opinion, the judgment of the district court is

AFFIRMED.